IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| MELINDA VAN HOY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:14-cv-00148 |
| | ) | Jury Demanded |
| HELEN ROSS MCNABB CENTER, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Melinda Van Hoy, in support of her Complaint against Defendant, Helen Ross McNabb Center, Inc. ("Defendant"), avers as follows:

### Jurisdiction and Venue

1. This district court's jurisdiction rests with 28 U.S.C. § 1331 for violations of the Family and Medical Leave Act of 1993 ("FMLA"), as amended, 29 U.S.C. § 2601, *et seq.* and the Age Discrimination in Employment Act of 1967, as amended (ADEA), 29 U.S.C. § 621, *et seq.*

2. This district court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3. Plaintiff has exhausted all administrative remedies and conditions precedent to the filing of this action.

4. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2), because all parties reside in this district and all or a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this district.

### Facts

5. Defendant, Helen Ross McNabb Center, Inc., is a not-for-profit corporation

incorporated in the State of Tennessee.

6.  Defendant's mission is to provide mental health care, addiction recovery and treatment, and other social services to children, adults, and families.

7.  Defendant is based in Knoxville, Tennessee, employs over 900 employees, and provides services throughout East Tennessee.

8.  Defendant is an "employer" within the meaning of, and subject to, the FMLA, ADEA, and THRA.

9.  Plaintiff, Melinda Van Hoy, graduated with a Bachelor of Science degree in Nursing from the University of Tennessee at Knoxville in 1975. The same year, Plaintiff was licensed as a Registered Nurse ("RN") and began working full-time at the UT Medical Center in Knoxville.

10.  In 1986, Plaintiff, a mother of five, left UT Medical Center and stepped away from the nursing profession to raise her kids, along with her husband, who was and is a full-time engineer at Oak Ridge National Laboratory.

11.  In 2000, Plaintiff reentered the nursing field, recertified as a RN, and went back to work full-time.

12.  After several years providing in-home care for elderly patients, and one year working at the Fort Loudon Medical Center, Plaintiff joined Defendant on or about June 29, 2009, as the only full-time RN assigned to Defendant's Gateway Center in Blount County, Tennessee.

13.  The Gateway Center is a residential facility designed to provide treatment and counseling to adolescent males between the ages of 13 and 18 for alcohol and drug abuse.

14.  While Plaintiff was the only full-time RN assigned to the Gateway Center, Defendant also employed one or more PRN nurses (i.e., per diem nurses) to provide nursing services at the Gateway Center on the weekends, at night, or on an as needed basis.

15. Plaintiff is now 61 years-old and, during her employment, was substantially older than her closest comparators, i.e., the PRN nurses referenced above.

16. Additionally, the Gateway Center's workforce is and was mostly comprised of younger counselors who are not medically trained.

17. Plaintiff worked several years for Defendant without incident, receiving yearly pay raises and positive performance reviews.

18. Around July 2012, Defendant changed Plaintiff's reporting structure and, from that point until her termination in June 2013, Plaintiff reported to Lauren Bobrowski.

19. Ms. Bobrowski is believed to be in her thirties and, like the majority of those working at the Gateway Center, has a counseling background and no formal medical training.

20. One of the first things Ms. Bobrowski changed was Plaintiff's work schedule. Prior to reporting to Bobrowski, Plaintiff generally worked Monday through Friday, 7:30 a.m. to 1:30 p.m., Friday evening from 6:30 p.m. to 8:30 p.m., and Saturdays from 8:00 a.m. to 10:00 a.m. This schedule allowed Plaintiff to properly administer medication to patients over the weekend.

21. Ms. Bobrowski, however, reduced Plaintiff's schedule and eliminated her Friday evening and Saturday shifts, which required Plaintiff to assemble medications in advance, a practice that is unwise because patient needs often change and cannot be predicted.

22. Plaintiff took a scheduled vacation with her husband from May 8, 2013 through Friday, May 17, 2013.

23. One of Plaintiff's job duties included scheduling and transporting resident patients for doctor visits.

24. Before leaving for vacation, Plaintiff met with Ms. Bobrowski and Jennifer Perkins, Bobrowski's supervisor, in person to make sure they were aware of all patient appointments

scheduled so Defendant could make necessary accommodations in Plaintiff's absence. The same appointment information was also available to Ms. Bobrowski and Ms. Perkins via the company's open calendar computer software.

25. During her vacation, Plaintiff began experiencing severe pain in her left leg.

26. Plaintiff returned to work as scheduled on May 20, 2013, still in pain.

27. On May 21, 2013, Plaintiff visited her family physician, who, in light of inconclusive x-rays, concluded that Plaintiff was suffering from shin splints and recommended she merely take a few days off from work to ice and elevate her leg.

28. Plaintiff followed her doctor's advice and took off work from May 21, 2013 to May 24, 2013, using accumulated sick leave.

29. Plaintiff returned to work on Monday, May 26, 2013, still in pain. Believing she had just a shin splint, Plaintiff did her best to work through the pain.

30. The pain, however, only worsened, which was obvious to anyone working with Plaintiff, including Bobrowski and Perkins, who witnessed Plaintiff grimacing with pain, at times tearing up, and hobbling around to perform her duties.

31. On June 12, 2013, Plaintiff made an appointment to see an orthopaedic specialist on June 18, 2013.

32. Plaintiff advised Ms. Brobowski and Ms. Perkins of her upcoming appointment and the need to leave work early on June 18, 2013 for her appointment.

33. On June 18, 2013, said orthopaedic specialist diagnosed Plaintiff with a leg fracture and advised she could not work or drive for several weeks, at least until July 17, 2013.

34. Almost immediately after receiving this diagnosis, on June 18, 2013, Plaintiff contacted both Bobrowski and Perkins via text message to let them know the news. Plaintiff informed

4
Case 3:14-cv-00148-TAV-HBG   Document 1   Filed 04/10/14   Page 4 of 9   PageID #: 4

Bobrowski and Perkins that she had, as suspected, been "walking on a fractured left leg [and] will not be able to drive or work till 7 16 maybe."

35. Ms. Bobrowski responded to Plaintiff's text about an hour later, stating "Ok let me know please. Are there appts this week? Or tomorrow?"

36. Plaintiff also sent a text messages to the two LPN nurses working at Gateway Center to let them know of her diagnosis and the fact that she would be out for several weeks.

37. On June 20, 2013, at approximately 8:09 a.m., Plaintiff sent another text message to Ms. Bobrowski, in which Plaintiff requested as follows: "Please mail me the form for fmla and what is your email address."

38. At approximately 9:30 a.m. on June 20, 2013, Ms. Bobrowski called Plaintiff. During this conversation, Plaintiff again requested the FMLA paperwork. Ms. Bobrowski, however, replied that it would be unnecessary because Plaintiff was being terminated for "medication errors."

39. At the time of termination, Bobrowski did not explain what the errors were; however, Defendant produced documents to the Equal Employment Opportunity Commission ("EEOC") indicating that there were two alleged "medication errors," the first of which apparently happened while Plaintiff was actually at the beach on vacation and the second on a weekend, clearly indicating neither were Plaintiff's fault. Further, neither "medication error" had been brought to Plaintiff's attention before her abrupt termination.

## Count I
### Defendant's Interference with FMLA Rights

40. Plaintiff incorporates by reference the allegations contained in Paragraphs 1–39 as if set forth fully herein.

41. In June 2013, Plaintiff had been employed by Defendant for at least twelve months and

had worked at least 1,250 hours during the previous twelve-month period.

42. Plaintiff was entitled to take up to twelve weeks of FMLA leave in 2013, because of a serious health condition.

43. Plaintiff gave Defendant proper notice of the need for FMLA leave.

44. Ms. Bobrowski and Ms. Perkins were also aware of the possibility that Plaintiff would need to take FMLA leave, even before she officially requested "FMLA leave."

45. Plaintiff was entitled to take FMLA leave and be restored to her same position of employment, or to an equivalent position, upon her return from FMLA leave.

46. Defendant interfered with Plaintiff's right to FMLA leave and failed restore Plaintiff to such a position.

47. As a direct and proximate result of Defendant's interference with Plaintiff's FMLA rights, Plaintiff has suffered lost wages and benefits, for which Defendant is liable.

48. As a direct and proximate result of Defendant's interference with Plaintiff's FMLA rights, Plaintiff has suffered emotional distress as well as other forms of compensatory damages.

49. Plaintiff is entitled to reasonable attorney's fees and costs stemming from this violation of FMLA.

### Count II
### Defendant's Retaliatory Discharge for Exercising FMLA Rights

50. Plaintiff incorporates by reference the allegations contained in Paragraphs 1–49 as if set forth fully herein.

51. Plaintiff attempted to exercise her right to leave under FMLA.

52. Defendant discharged Plaintiff because she exercised said right and, therefore, violated the FMLA.

53. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered lost

6
Case 3:14-cv-00148-TAV-HBG   Document 1   Filed 04/10/14   Page 6 of 9   PageID #: 6

wages and benefits, for which Defendant is now legally liable.

54. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered humiliation, embarrassment, and emotional distress.

55. Plaintiff is entitled to reasonable attorney's fees and costs stemming from this violation of the FMLA.

Count III
Defendant's Age Discrimination in Violation the ADEA and THRA

56. Plaintiff incorporates by reference the allegations contained in Paragraphs 1–55 as if set forth fully herein.

57. Plaintiff's date of birth is November 21, 1952.

58. Throughout his employment, Plaintiff was treated less favorably than similarly situated, younger employees, because of her age.

59. Defendant replaced Plaintiff with a female outside of Plaintiff's protected age group.

60. Defendant intentionally and deliberately discharged Plaintiff because of her age in violation of the ADEA and the THRA.

61. Defendant willfully and with malice or reckless indifference violated the federally protected rights of Plaintiff, entitling Plaintiff to punitive damages.

62. As a direct and proximate result of Defendant's age discrimination, Plaintiff has suffered lost wages and benefits, for which Defendant is liable.

63. As a direct and proximate result of Defendant's age discrimination, Plaintiff has suffered humiliation, embarrassment, and emotional distress as well as other forms of compensatory damages.

64. Plaintiff is entitled to reasonable attorney's fees and costs stemming from Defendant's violations of the ADEA and THRA.

## Count IV
### Defendant's Negligent Infliction of Emotional Distress

65. Plaintiff incorporates by reference the allegations contained in Paragraphs 1–64 as if set forth fully herein.

66. Defendant owed a duty to Plaintiff as her employer not to subject her to unlawful discrimination and retaliation.

67. Defendant breached the aforesaid duty by engaging in conduct made unlawful by the ADEA FMLA, and THRA.

68. As a direct and proximate result of Defendant's violation of said duty, Plaintiff has suffered (and will continue to suffer) serious and severe emotional injury.

### Punitive Damages

69. Plaintiff incorporates by reference the allegations contained in Paragraphs 1–68 as if set forth fully herein.

70. Defendant acted with malice or reckless indifference to the protected rights of Plaintiff, entitling Plaintiff to punitive damages.

### Prayer for Relief

WHEREFORE, Plaintiff, Melinda Van Hoy, respectfully prays for relief as follows:

1. That process issue and that Defendant be required to answer this Complaint within the time prescribed by the Federal Rules of Civil Procedure.

2. That Plaintiff be awarded damages in the amount of wages, salary, employment benefits and other compensation, including, but not limited to back pay and front pay (or reinstatement), plus an equal amount of liquidated damages and/or prejudgment interest; compensatory damages for emotional distress, and punitive damages for Defendant's intentional indifference to

Plaintiff's protected rights;

3. That Plaintiff be awarded any actual monetary loss sustained by Plaintiff, plus an equal amount of liquidated damages and/or prejudgment interest;

4. That Plaintiff be awarded reasonable attorneys' fees and costs;

5. That Plaintiff be awarded such other legal and equitable relief to which she may be entitled; and

6. Plaintiff further demands a Jury to try this cause.

                                              Respectfully submitted,

                                            /s/Richard E. Collins
                                           Richard Everett Collins (TN Bar # 24368)

COLLINS & DOOLAN, PLLC
Cable Piano Building
422 S. Gay St., Suite 301
Knoxville, TN 37902
(865) 247-0434
richard@collinsdoolan.com